UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**KENNETH P. SEMATASKA**

    **PLAINTIFF,**

VS.                                    **CASE NO.:** _____

**AT&T UMBRELLA BENEFIT PLAN NO. 3,**

    **DEFENDANT.**

_____/

## COMPLAINT

PLAINTIFF, KENNETH P. SEMATASKA, by and through his undersigned attorney, sues DEFENDANT, AT&T UMBRELLA BENEFIT PLAN NO. 3 (hereinafter "THE PLAN"), and alleges:

### I. PARTIES, JURISDICTION, AND VENUE

1. This is an action under the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1001 et seq.

2. PLAINTIFF alleges that his claim "relates to" an "employee welfare benefit plan," as defined by ERISA, 29 U.S.C. § 1002(1), and that the subject disability plan constitutes a plan under ERISA. Therefore, PLAINTIFF alleges that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §1132(e).

3. Venue is proper within the Middle District of Florida pursuant to 29 U.S.C. § 1132(e)(2), because such action may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

4. The events giving rise to this complaint occurred while Plaintiff was a resident of Citrus County, State of Florida.

5. PLAINTIFF was an employee of AT&T since January 8, 1996.

6. In 2020 when he was assigned to the DIRECTV LLC division of AT&T and began working directly for DIRECTV LLC in 2021 after the AT&T split.

7. DIRECTV Companies were deemed and treated as a Participating Company in each of the applicable Programs in AT&T Umbrella Benefit Plan No. 3.

8. By virtue of his employment with DirectTV LLC, PLAINTIFF was a "participant" in AT&T DISABILITY INCOME PROGRAM (MANAGEMENT EMPLOYEES), a component of the AT&T UMBRELLA BENEFIT PLAN NO.3, a welfare benefit plan, as defined by ERISA, 29 U.S.C. § 1002(7). A copy of the Plan and Summary of Material Modifications is attached hereto and incorporated herein as **Exhibit "A"** and a copy of the Summary Plan Description is attached hereto and incorporated herein as **Exhibit "B".**

9. Upon information and belief, the Plan Administrator appointed AT&T Integrated Disability Service Center (AT&T IDSC) as the third-party administrator for benefits claims and appeals. The AT&T IDSC is administered by Sedgwick Claims Management Services, Inc. ("Sedgwick").

10. Sedgwick's Integrated Disability Service Center ("IDSC") administers claims for short-term disability (STD) and long-term disability (LTD) benefits under AT&T's disability benefits programs, and Sedgwick's Quality Review Unit ("QRU") decides appeals of denied disability claims.

11. PLAINTIFF alleges upon information and belief that AT&T, Inc., a Delaware corporation doing business in Florida, with legal offices at P.O. Box 132160, Dallas, TX 75313-2160, is the Plan Sponsor and AT&T Services, Inc. is the Plan Administrator, with legal offices at 208 S. Akard Street, Dallas, TX 75202.

12. THE PLAN may be served with process, upon the Plan Administrator, AT&T Services, Inc., pursuant to 29 U.S.C. § 1132(d)(1), by and through its Registered Agent, CT Corporation System, 2100 South Pine Island Road, Plantation, FL 33324 or upon a Plan Trustee.

13. PLAINTIFF has satisfied all conditions precedent to be afforded coverage under THE PLAN.

## II. THE DISABILITY PLAN

14. At all times material, there was in full force and effect a short-term and long-term disability plan which covered PLAINTIFF.

15. The AT&T DISABILITY INCOME PROGRAM (MANAGEMENT EMPLOYEES), provides in pertinent part:

> You are considered Totally Disabled when, because of Illness or Injury, you are unable to perform all of the essential functions of your job or

3

another available job assigned by your Participating Company with the same full-time or part-time classification for which you are qualified.

### III.   FACTS OF PLAINTIFF'S DISABILITY CLAIM

16.   Prior to his disability, PLAINTIFF worked in a high-level, highly demanding position as a Senior-Applications Developer for DIRECTV, LLC.

17.   The regular duties of PLAINTIFF's job included responsibility for the performance of any/all functions involved in the development and/or maintenance of new or existing applications.

**18.**   His Key Roles and Responsibilities included: Using programming language and technology, writes code, completes programming and documentation, and performs testing and debugging of applications. Analyzes, designs, programs, debugs, and modifies software enhancements and/or new products used in local, networked, or Internet-related computer programs. May interact with users to define system requirements and/or necessary modifications. Job Contribution: Senior level technical expertise. Deep technical knowledge and subject matter expert on ATT technologies. A copy of the Senior Application Developer's Job Description is attached hereto and incorporated herein as **Exhibit "C".**

19.   PLAINTIFF ceased working on April 22, 2022, on account of his medical condition being more fully delineated in the claim file.

20.   After a seven (7) day elimination period, DEFENDANT approved his claim for short term disability (STD) benefits, and paid benefits through August 08, 2022.

21. DEFENDANT terminated PLAINTIFF's claim for benefits advising that the clinical information provided and reviewed did not document a severity of his condition(s) that supported his inability to perform his essential job occupation as a Senior-Applications Developer.

22. This was based on a review conducted by Roderick Lawrence McCoy, M.D. who opined that "there is no medical documentation of tests, studies, functional examinations, or performance evaluations that objectively assess, describe, or characterize any functional limitations or impairments related to the claimant's previously diagnosed spinal pathology."

23. PLAINTIFF, through counsel, submitted a pre-litigation appeal of the short-term disability termination, and concomitant request for long-term disability benefits, via fax on March 6, 2023.

24. The Employee Retirement Income Security Act of 1974 (ERISA) and 29 CFR 2560.503-1(i)(3)(i) require that a plan administrator notify the claimant of the plan's benefit determination on review no later than 45 days after receipt of claimant's appeal letter, unless there are special circumstances that require an extension. The plan administrator must indicate the special circumstances that require an extension of time.

25. Defendant's 45-day deadline to render a decision on PLAINTIFF'S appeal fell on April 20, 2023.

26. DEFENDANT acknowledged receipt of his appeal by letter dated March 9, 2023, advising that a decision is due on April 20, 2023. A copy of

5

DEFENDANT'S March 9, 2023, Appeal Acknowledgement is attached hereto and incorporated herein as **Exhibit "D".**

27. In support of his appeal and claim for LTD benefits, PLAINTIFF provided medical literature, medical records and diagnostic studies providing objective evidence of impairment, and functional limitations.

28. Rather than adjudicating PLAINTIFF'S claim and appeal, DEFENDANT commissioned Network Medical Review Co. Ltd. (NMR) to arrange for an Independent Medical Examination (IME), and notified PLAINTIFF by phone on April 10, 2023, that an IME appointment was scheduled for PLAINTIFF to take place on April 20, 2023, the day the decision was due.

29. PLAINTIFF through counsel inquired as to the reasons and guidelines for DEFENDANT'S referral and recommendation for an IME and requested a copy of the Plan document allowing for an IME while an appeal is pending. A copy of PLAINTIFF'S counsel letter dated April 10, 2023, is attached hereto and incorporated herein as **Exhibit "E"**.

30. A subsequent notice advised that the IME provider needed to update the appointment date to April 27, 2023. A copy an April 12, 2023, email correspondence between NMR and Sedgwick is attached hereto and incorporated herein as **Exhibit "F".**

31. Thereafter, on April 13, 2023, DEFENDANT sent a Tolling Request to PLAINTIFF advising that they received his "request for additional time to submit medical records which might be significant to our review" of his appeal and that they

were "suspending their review for 21 days then the remainder of the 45-day determination period would resume on May 04, 2023." A copy of DEFENDANT'S April 13, 2023, Tolling Request, is attached hereto and incorporated herein as **Exhibit "G"**.

32. DEFENDANT failed to provide the reason and guidelines for referral and recommendations for PLAINTIFF'S IME.

33. By letter of April 14, 2023, PLAINTIFF through counsel provided the report of a February 28, 2023, Functional Capacity Evaluation (FCE) showing objective evidence of impairment and functional limitations.

34. Additionally, since PLAINTIFF did not request additional time to submit medical records, in his letters of April 14th and April 20, 2023, PLAINTIFF through counsel argued that tolling was not appropriate under the circumstances since he did not fail to submit information necessary to decide the claim that would invoke the tolling provision of the Regulations. A copy of PLAINTIFF'S counsel letter dated April 20, 2023, is attached hereto and incorporated herein as **Exhibit "H"**.

35. Failing to receive a response to concerns raised in his letters of April 14th and 20th, on April 24, 2023, PLAINTIFF, through Counsel inquired whether transportation would be provided for him to attend the IME since the physician was located approximately 85 miles (1 hour 34 minutes) from his residence. A copy of PLAINTIFF'S counsel letter dated April 24, 2023, is attached hereto and incorporated herein as **Exhibit "I"**.

36. Nicolle Long, scheduling coordinator with NMR responded that "Sedgwick is not approving transportation services to be arranged and has requested to cancel the upcoming IME on April 27, 2023." A copy of the email correspondence from Nicolle Long, is attached hereto and incorporated herein as **Exhibit "J".**

37. Subsequently, on May 11, 2023, DEFENDANT requested a 45-day extension to June 25, 2023, advising that they were unable to make a determination within the standard 45-days following receipt of PLAINTIFF'S appeal request. A copy of DEFENDANT'S Appeal Extension letter dated May 11, 2023, is attached hereto and incorporated herein as **Exhibit "K".**

38. DEFENDANT advised the special circumstances for requiring an extension was that they were **"**waiting for FCE to be scheduled and to take place."

39. By letter dated May 12, 2023, PLAINTIFF notified DEFENDANT that since virtually every review of disability claims involves a medical and vocational review a request for an FCE cannot constitute a valid special circumstance, and that the deadline to render a decision had passed. A copy of PLAINTIFF'S counsel Notice of ERISA Violation letter dated May 12, 2023, is attached hereto and incorporated herein as **Exhibit "L".**

40. Additionally, on May 18, 2023, PLAINTIFF through counsel provided DEFENDANT additional medical reports from his provider in support of his claim and appeal, and requested if a separate form was required to be completed for long term disability benefits, to provide it or notify his counsel how to obtain it. A copy of

PLAINTIFF'S counsel letter dated May 18, 2023, is attached hereto and incorporated herein as **Exhibit "M".**

41. DEFENDANT ignored PLAINTIFF'S letter advising that it was in violation of ERISA Regulations by not timely making a benefit determination, and his request for a form to complete for long term disability benefits.

42. On May 23, 2023, Nicolle Long, scheduling coordinator with NMR notified PLAINTIFF that an FCE was scheduled for June 2, 2023, and on May 25, 2023, provided a Pre FCE questionnaire for completion.

43. PLAINTIFF, through counsel, confirmed that he would attend and notified Ms. Long that the Pre FCE questionnaire was completed and submitted to the FCE provider as noted on the form.

44. Upon arrival for the scheduled FCE, the receptionist advised PLAINTIFF that the FCE was cancelled two (2) days earlier.

45. PLAINTIFF, through counsel, notified both DEFENDANT and Nicole Long that upon arrival at the FCE facility he was notified of its cancellation and inquired regarding the reason for cancellation. A copy of PLAINTIFF'S June 2, 2023, email correspondence to DEFENDANT is attached hereto and incorporated herein as **Exhibit "N".**

46. Ms. Long responded that "it was cancelled because the history questionnaire indicated he has restrictions set with Dr. Choung. We need to obtain these prior to the FCE. We are waiting for the provider info so we can request the restrictions & proceed with rescheduling." A copy of email correspondence to and

from NMR dated June 2, 2023, is attached hereto and incorporated herein as **Exhibit "O".**

47. DEFENDANT failed to respond and did not reschedule the FCE.

48. DEFENDANT has failed to adjudicate PLAINTIFF's STD appeal and claim for LTD benefits.

49. PLAINTIFF's claim and appeal is deemed denied by DEFENDANT's failure to render a timely decision under ERISA Regulations as well as by its own self-imposed June 25, 2023, deadline.

50. PLAINTIFF exhausted his remedies under ERISA, by operation of law.

## V. CLAIM FOR RELIEF
## RECOVERY OF PLAN BENEFITS, 29 USC §1132(a)(1)(B)

51. PLAINTIFF incorporates paragraphs 1 through 49 as if stated in full herein.

52. PLAINTIFF requests that this Court review the termination of benefits in this case and declare that he is entitled to all benefits under THE PLAN, including payment of all back benefits with interest.

53. This is a claim to recover benefits, enforce rights, and clarify rights to future benefits under 29 U.S.C. § 1132(a)(1)(B).

54. Because DEFENDANT has failed to adjudicate the pre-litigation appeal by the regulatory deadline, PLAINTIFF is entitled to have the District Court

review this matter without any deference to DEFENDANT's decision to terminate benefits.

55. PLAINTIFF is entitled to *de novo* review.

56. PLAINTIFF is entitled to both Short Term and Long-Term Disability benefits because:

    (a) The benefits are permitted under THE PLAN.

    (b) PLAINTIFF has satisfied all conditions to be eligible to receive the benefits.

    (c) PLAINTIFF has not waived or otherwise relinquished his entitlement to the benefits.

57. Pursuant to 29 U.S.C. § 1132(a)(1)(B), PLAINTIFF is a Plan Participant, and is entitled to sue for a judicial determination and enforcement of benefits.

58. DEFENDANT improperly terminated PLAINTIFF's disability benefits to which he is entitled and failed to adjudicate his appeal and claim for LTD benefits in contravention of THE PLAN and ERISA.

59. Pursuant to ERISA 503(g) 29 U.S.C. § 1132(g), PLAINTIFF is entitled to an award of reasonable attorney's fees and costs incurred in an action brought under ERISA.

60. PLAINTIFF has been required to obtain an attorney to represent him in this matter and has agreed to a reasonable attorney's fee as compensation for these services.

**WHEREFORE,** PLAINTIFF requests the entry of Judgment against the DEFENDANT for damages, including but not limited to:

(a) Award of benefits in the amount not paid to PLAINTIFF retroactive back to the date that they were wrongfully terminated by DEFENDANT, together with interest thereon at the legal rate on each monthly payment, from the date it became due until the date it is paid.

(b) Payment of Long-Term Disability benefits going forward in accordance with the PLAN.

(c) Award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) and costs incurred in bringing this action; and

(d) For such other and further relief as the Court deems equitable, just and proper.

June 28, 2023

/s/ Claudeth J. Henry
Claudeth J. Henry, Esq.
Florida Bar No. 0964964
CJ HENRY LAW FIRM, PLLC
2303 East Fort King Street
Ocala, FL 34471
Tel:  352-304-5300
Fax:  352-304-6072
Claudeth@cjhenrylaw.com
Attorney for Plaintiff, Kenneth Semataska